**HARRISON v. HARRISON et al. (No. 2406.)**

(Court of Civil Appeals of Texas. Texarkana.
March 31, 1921.)

1. **Appeal and error ⊚⇒1040(4)—Sustaining exception to prayer for partition harmless where jury found against contract under which plaintiff claimed.**

In a suit in which plaintiff claimed a contract by defendant, her brother, to compensate her for her services rendered to him, and prayed for a partition of the property accumulated during the time she was rendering the service, the ruling of the trial court in sustaining an exception to the prayer for partition was harmless where the jury found that the contract claimed by plaintiff was not made.

2. **Appeal and error ⊚⇒1046(5)—Statement of court held harmless where he could have refused to submit issue.**

A statement by the trial court that he was doubtful whether the evidence justified submission to the jury of the issue whether the contract claimed by plaintiff was made was not prejudicial to plaintiff where the evidence would have authorized the court to refuse to submit the issue.

3. **Work and labor ⊚⇒7(6)—Promises to pay for services of sister given home in family not implied.**

Where a brother took his sister into his family to give her a home, and she rendered the usual services as a member of the family, the law does not imply a promise to pay the reasonable value of such services less the value of the benefits received by the sister.

Appeal from District Court, Henderson County; John S. Prince, Judge.

Suit by Ida Harrison against T. N. Harrison and others. Judgment for defendants, and plaintiff appeals. Affirmed.

E. A. Landman, of Athens, for appellant.
A. B. Watkins, of Athens, for appellees.

HODGES, J. In January, 1920, the appellant, Ida Harrison, filed this suit against her brother, Thomas N. Harrison, for the partition of property and for the value of personal services. The petition stated the relationship of the parties, and alleged that the plaintiff lived with her brother under a "continuing contract" for more than 20 years; that she was to live with him as one of the family; and that, under the terms of her contract, it was her duty to work as a member of the family, to help cook, sew, raise and gather crops, and to perform such other services as might arise in the course of time. She averred that for the time stated she had discharged her duties under her contract; that partially through her labors the defendant had accumulated real and personal property aggregating in value $12,000. She further charged that, after she became old, sick, and

unable to perform her usual labors, she was ejected by the defendant from his home, and was thereafter denied the right which he had contracted to give her. She asked for an accounting and for a partition of the property accumulated during the term of her services, and in the alternative prayed for damages in the sum of $4,000 for a breach of the contract. The court sustained an exception to that part of the petition which sought a partition of the property. In addition to the exception referred to, the defendant denied the contract alleged, and pleaded that he had voluntarily taken the plaintiff into his home from a sense of duty, for the purpose of caring for her while she was unable to care for herself.

The evidence showed that in 1901 the mother of the appellant died, and that appellant and her two sisters were taken into the home of George Harrison, their oldest brother. The appellee was at that time unmarried, and had no home. In 1896, he married, and then determined to share with his brother George the care and responsibility of supporting the sisters. At his instance the appellant went to his home to live as a member of his family. Later, upon the death of his brother George, the appellee took into his home the other sisters and two of his brother George's small children.

The testimony as to the existence of a contract is exceedingly meager. The appellant testified that she went to live with her brother the 1st day of January, 1906.

"He came after me and told me I had a home with him; to come and live with him, that that was my home."

She further stated that—

"Tom Harrison told me that he was going to give me a home just as long as I lived. He told me that before I started with him."

The appellant's sisters testified, in substance, that the appellee went to the home of his brother, George Harrison, and offered to take the appellant to live with him as a member of his family; that he seemed to be moved by a desire to keep the girls together. The appellee denied that he made any contract to furnish the appellant a home as claimed; he testified that in making the offer to take his sisters he was moved by a sense of duty to assist in caring for them; that he never thought of binding himself to keep the plaintiff during her natural life. He had the same kind of an understanding with his other two sisters, who lived with him after the death of their brother George, and who later married and moved to homes of their own. He also testified that the plaintiff lived with him until 1906, when he moved to Runnels county, Tex., where he remained for a year or more. Up to that time he had accumulated practically nothing. On his return, his sister

came back to live with him, at his request, and continued to live with him until 1915, when he moved away from the place they were occupying. Since that time she had never lived in his family. According to his testimony, she did comparatively little towards enabling him to make a living for the family, and contributed practically nothing toward accumulating the property he owned at the time of the trial.

At the conclusion of the testimony the court hesitated about submitting the issue of a contract to the jury. But after making some remarks which indicated a doubt in his mind as to the sufficiency of the evidence to require such submission, he gave a charge in which he defined what was required to constitute a contract. He also authorized the jury to find in favor of the plaintiff in the suit if they believed from a preponderance of the evidence the contract alleged in the petition had been made and broken by the defendant, and that the measure of the plaintiff's damages would be such sum of money as would compensate her for the services. rendered. The jury returned a general verdict in favor of the defendant.

[1] The finding of the jury that no contract was made settled the material issues involved in the controversy. If there was no contract between the parties by which the appellant was to have a home for her life, in consideration of her services, there was no basis for a partition of the property, and for that reason no injury resulted from the order of the court sustaining exception to the prayer for partition.

[2] There is an assignment of error complaining of the action of the court in intimating that the evidence was insufficient before submitting his charge. The bill of exception was qualified by the court with the statement that no exception was taken to that language at the time. We are of the opinion that the state of the evidence was such that the court might have refused to submit the issue of a contract such as that sued on.

[3] Counsel for appellant requested the court to instruct the jury that the plaintiff was entitled to recover the value of her service rendered to the defendant less any benefits received, regardless of whether or not there was any contract. The evidence did not warrant that form of a charge. If the testimony of the appellee is true, there was no implied agreement to compensate the appellant for her services. His engagement was merely to provide for her as if she were a member of his family, and she was to give her services in return for his care and maintenance.

While the court did not submit the issue of limitation, the appellee had pleaded it; and the evidence conclusively shows that

more than four years had elapsed between the time the appellant's cause of action arose, if she had any, and the filing of this suit. According to her own testimony, he discarded her and breached his contract in 1915.

The judgment is affirmed.

───

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes